1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

7 ELLIOTT GILLESPIE, et al.,                    Case No. 16-cv-02392-HSG

8          Plaintiffs,

                                               ORDER GRANTING MOTION TO
9      v.
                                               DISMISS IN PART AND DENYING IN
10 PRESTIGE ROYAL LIQUORS CORP., et             PART
   al.,
11                                              Re: Dkt. No. 75
           Defendants.
12

13         Pending before the Court is a motion to dismiss for lack of personal jurisdiction and for

14 improper venue brought by Defendants Gabriel Sezanayev and Prestige Royal Liquors, Corp.

15 ("PRL"). Dkt. No. 75 ("Mot.").[1] For the reasons detailed below, the Court GRANTS the motion

16 in part and transfers venue to the Southern District of New York.

17 **I.     BACKGROUND**

18         This action arises out of a patent dispute regarding the design of a beverage container

19 shaped like a solid gold bar. On May 2, 2016, Plaintiffs Elliott Gillespie and Rockwood Spirits

20 International filed a complaint seeking: (1) a declaration that Plaintiffs are not infringing

21 Defendants' design patents; (2) a declaration that Defendants' patents are invalid and

22 unenforceable; and (3) an injunction against, and damages for, infringing Plaintiffs' own design

23 patents. *See* Dkt. No. 1. Plaintiffs then filed an amended complaint on February 17, 2017. *See*

24

25 _____

   [1] Defendants initially filed their renewed motion to dismiss on February 21, 2017. *See* Dkt. No.
26 74. However, that motion was over the page limit, so Defendants filed an amended motion the
   next day that was within the page limit. *See* Dkt. Nos. 75 (amended motion), 80 at 1("Reply"); *cf.*
27 Civil L.R. 7-4. Plaintiffs ask the Court to strike the amended motion because Defendants did not
   seek permission to file it. Dkt. No. 78 ("Opp.") at 7. The Court finds that the two motions are
28 substantively the same and the Court's analysis would also be the same for either motion.
   Accordingly, the Court considers Dkt. No. 75 for purposes of this order.

United States District Court
Northern District of California

1  Dkt. No. 73 ("FAC").

2  According to the amended complaint, Plaintiff Gillespie resides in Canada and is the

3  president and majority shareholder of Rockwood Spirits, a Canadian company with its principal

4  place of business in Ottawa, Canada. FAC ¶¶ 4, 7. Rockwood Spirits designs, manufactures,

5  produces, and sells products. *Id*. ¶ 7. Gillespie has offices and a distillery located in San

6  Francisco, California. *Id*. ¶ 4. Plaintiffs manufacture and sell their products, including Gold Bar

7  Whiskey, which is sold in a gold-bar-shaped bottle, to customers in the United States. *Id*. ¶¶ 1–2.

8  Gillespie filed a patent application for his bottle in July of 2009, and was granted a design patent

9  on August 16, 2011. *Id*. ¶ 25.

10  Defendant Sezanayev resides in New York and is the vice president and CEO of PRL, a

11  corporation with its principal place of business in New York. *Id*. ¶¶ 8, 10. Defendants sell

12  beverages, including 3 Kilos Vodka, which is also sold in a gold-bar-shaped bottle. *Id*. ¶¶ 32–35.

13  Sezanayev filed a patent application for his bottle in March of 2015, and was granted design

14  patents in 2016. Dkt. No. 31-1. On March 22, 2016, Plaintiffs' Gold Bar Whiskey and

15  Defendants' 3 Kilos Vodka were displayed at the same trade show. FAC ¶ 35. On April 1, 2016,

16  Defendants sent Gillespie a cease and desist letter, alleging that Plaintiffs' Gold Bar Whiskey

17  infringed on Defendants' design patents. *Id*. ¶ 27.

18  Defendants filed their first motion to dismiss the original complaint for lack of personal

19  jurisdiction and improper venue on July 7, 2016. Dkt. No. 31. The Court denied the motion

20  without prejudice and ordered the parties to engage in jurisdictional discovery. Dkt. No. 51.

21  Defendants then filed their renewed motion to dismiss on the same grounds on February 22, 2017.

22  *See* Mot. In their amended motion, Defendants also request, in the alternative, an order

23  transferring the action to the United States District Court for the Southern District of New York.

24  *Id*. at 1.

25  **II.    DISCUSSION**

26  The Court first addresses Defendants' contention that the Court lacks personal jurisdiction

27  over this action and then turns to Defendants' next contention that the U.S. District Court for the

28  Northern District of California is an improper venue. *See Leroy v. Great W. United Corp.*, 443

1   U.S. 173, 180 (1979) ("The question of personal jurisdiction, which goes to the court's power to

2   exercise control over the parties, is typically decided in advance of venue, which is primarily a

3   matter of choosing a convenient forum.").

4         **A.**    **Personal Jurisdiction**

5            **i.**    **Legal Standard**

6         Federal Circuit law governs the personal jurisdiction analysis in an action "intimately

7   related to patent law." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361

8   (Fed. Cir. 2006). In analyzing personal jurisdiction, the Federal Circuit engages in a two-part

9   inquiry: (1) whether the state's long-arm statute authorizes service of process on the defendant

10  and (2) whether the exercise of jurisdiction comports with due process. *Celgard, LLC v. SK*

11  *Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015).

12        Where a state, like California, "authorize[s] its courts to exercise jurisdiction over persons

13  on any basis not inconsistent with . . . the Constitution of the United States," *see Walden v. Fiore*,

14  134 S. Ct. 1115, 1121 (2014), federal courts must determine whether the exercise of jurisdiction

15  over a defendant "comports with the limits imposed by federal due process." *Daimler AG v.*

16  *Bauman*, 134 S. Ct. 746, 753 (2014); *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir.

17  2001) ("[B]ecause California's long-arm statute is coextensive with the limits of due process, the

18  two inquiries collapse into a single inquiry: whether jurisdiction comports with due process.").

19  "Due process requires that the defendant have sufficient 'minimum contacts with [the forum state]

20  such that maintenance of the suit does not offend traditional notions of fair play and substantial

21  justice.'" *Celgard*, 792 F.3d at 1377 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

22  (1945)).

23        A plaintiff may invoke one of two categories of personal jurisdiction: either general or

24  specific. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). Specific jurisdiction exists if:

25  (1) the defendant has performed some act or consummated some transaction with the forum by

26  which it purposefully availed itself of the privilege of conducting business in California; (2) the

27  plaintiff's claims arise out of or result from the defendant's forum-related activities; and (3) the

28  exercise of jurisdiction is reasonable. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007,

3

1    1019 (9th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985)).

2    "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the

3    burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v.*

4    *Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  Although the court "may not assume the truth of

5    allegations in a pleading which are contradicted by affidavit," *CollegeSource, Inc. v.*

6    *AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (quotation omitted), the court must

7    resolve conflicts between the facts contained in the parties' affidavits in plaintiff's favor. *See*

8    *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  "[I]n the absence

9    of an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional

10   facts to withstand the motion to dismiss." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704

11   F.3d 668, 671–72 (9th Cir. 2012) (quotation omitted).

### ii.    Analysis

#### a.    Purposeful Availment

14          Defendants assert that they did not have sufficient contacts with California to justify the

15   Court's exercise of personal jurisdiction at the time the original complaint was filed on May 2,

16   2016.[2]  Mot. at 2–3.  "The purposeful availment requirement ensures that a non-resident defendant

17   will not be haled into court based upon random, fortuitous, or attenuated contacts with the forum

18   state." *Rio Properties*, 284 F.3d at 1019.  A non-resident defendant purposefully avails itself of

19   the forum if its contacts with the forum are attributable to (1) intentional acts; (2) expressly aimed

20   at the forum; (3) that cause harm, the brunt of which is suffered — and which the defendant knows

21   is likely to be suffered — in the forum. *Id*.

22          Several facts indicate that Defendants have personally availed themselves of the benefits

23   and protections of California:

24

---

25   [2] Plaintiffs argue that the Court may analyze personal jurisdiction from the filing date of the
26   amended complaint (February 2017), and accordingly may rely on any conduct that occurred
     through that filing date. Opp. at 7.  Defendants, on the other hand, argue that the Court must
27   analyze jurisdiction from the filing date of the initial complaint (May 2016) and may not rely on
     any facts after that date.  Reply at 2.  Because the Court concludes that it has personal jurisdiction
28   based on alleged conduct that occurred prior to the initial complaint, the Court declines to reach
     this issue.

1      •   Defendants sold their product to at least one California resident through their

2         reseller Liquor Wine Warehouse prior to May 2, 2016. *See* FAC, Ex. E.

3      •   Defendants communicated with that same California resident via Instagram

4         between October 6, 2015, and November 26, 2015, regarding delivery of their

5         product to California. *Id.*; *see also id.*, Ex. F. Defendants confirmed that they

6         could ship their product to the customer, who then provided them with his full

7         California address in San Diego. *See id*., Ex. F.

8      •   Defendants then publicized this California purchase on their social media accounts

9         with a picture of the customer and the caption: "[a] very patient and satisfied

10        customer from the west coast — Cali! Thank you for joining the #3kilosnation and

11        enjoy!" *See id*., Ex. H.

12      •   Defendants responded to several other inquiries on social media from people in

13        California asking where they could obtain the product. *Id*. In November 2015, one

14        person asked where he could get the product and said he was in Orange County,

15        California. *Id*. Defendants responded that they would ship to him. *Id*. In February

16        2016, Defendants told another person located in California that their product could

17        be purchased online from their distributor and that they would be launching

18        nationwide very soon. *See id*., Ex. K.

19      Defendants argue that Plaintiffs did little more than identify a single shipment to a single

20 California customer and that this is insufficient to establish personal jurisdiction. Mot. at 6–7.

21 Not only is this belied by the allegations identified above, but Defendants' two authorities are also

22 inapposite. In *Boschetto v. Hansing*, the defendant sold a single car to a single buyer in California

23 on eBay. 539 F.3d 1011, 1014 (9th Cir. 2008). The eBay listing indicated that the car was located

24 in Janesville, Wisconsin, and the parties arranged over email for transport from Wisconsin to

25 California. *Id*. The court declined to exercise jurisdiction for a "one-time contract for the sale of a

26 good that involved the forum state only because that is where the purchaser happened to reside."

27 *Id.* at 1019. And in *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, the plaintiff alleged nothing more

28 than a conclusory "stream of commerce" argument. 689 F.3d 1358, 1361, 1365 (Fed. Cir. 2012).

1    Here, in contrast, Defendants were ramping up their nationwide sales and specifically

2  highlighted the California purchase in their online advertising campaign. *See* FAC, Ex. H, K.

3  They also continued to respond to prospective California purchasers in an effort to ship to them or

4  direct them to Defendants' online distributor. *Id.* This is not the "random, fortuitous, or

5  attenuated contacts with the forum state" against which the purposeful availment requirement was

6  designed to insulate. *Rio Properties*, 284 F.3d at 1019. The Court finds that Defendants

7  purposefully availed themselves of the privilege of conducting business in California.

### b.  Claims Arise out of Forum-Related Conduct

9    In determining whether a plaintiff's claims arise out of a defendant's forum-related

10 conduct, a plaintiff must show that it would not have suffered an injury "but for" the defendant's

11 forum-related activities. *See Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001).

12 Because the above-identified contacts concern the sale and advertisement of the allegedly

13 infringing product in California, Plaintiffs' claims arise, at least in part, from Defendants' conduct

14 directed at California. Therefore, the Court finds that the "but for" requirement is easily met here.

### c.  Reasonableness

16   The exercise of jurisdiction is reasonable if it comports with "traditional notions of fair

17 play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316. The Court must consider several

18 factors in determining reasonableness:  (1) the extent of a defendant's purposeful interjection;

19 (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the

20 sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute;

21 (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the

22 plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

23 *Rio Properties*, 284 F.3d at 1021. No single factor is dispositive. *Id.*

24   These factors all weigh in favor of the Court exercising personal jurisdiction here. As

25 discussed above, Defendants interjected themselves in California by selling to California residents

26 and advertising those sales as part of their nationwide campaign. *See Sinatra v. National*

27 *Enquirer*, 854 F.2d 1191, 1199 (9th Cir.1988) ("The factor of purposeful interjection is analogous

28 to the purposeful direction analysis . . . ."). Because the alleged patent infringement occurred, at

1    least in part, in California, California's interest in adjudicating this dispute is just as strong as any

2    other forum.  Defendants' argument that the burden would be substantial to defend outside New

3    York is similarly unavailing.  Several potential third-party witnesses are located in California.

4    Opp. at 28; Reply at 6–7.  Moreover, "with the advances in transportation and telecommunications

5    and the increasing interstate practice of law, any burden is substantially less than in days past."

6    *Menken*, 503 F.3d at 1060 (quotation omitted).  Defendants have not identified any other basis for

7    the Court to conclude that exercising personal jurisdiction would be unreasonable given the facts

8    of this case.

9        **B.    Venue**

10           **i.    Legal Standard**

11           The Supreme Court has recently held that venue in patent infringement cases is governed

12   exclusively by 28 U.S.C. § 1400(b).  *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137

13   S. Ct. 1514, 1520–21 (2017).  This statute allows for any civil action related to patent

14   infringement to be brought in a judicial district (1) where the defendant resides, which for a

15   corporate defendant is a district within its state of incorporation; or (2) where the defendant has

16   committed acts of infringement *and* has a regular and established place of business.  *Id.* at 1516–

17   20.

18           Even if venue is proper, a district court may transfer a civil action to any other district or

19   division where it might have been brought "[f]or the convenience of the parties and witnesses [or]

20   in the interest of justice."  28 U.S.C. § 1404(a).  The purpose of this statute is "to prevent the

21   waste of time, energy and money and to protect litigants, witnesses and the public against

22   unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964),

23   *superseded by statute on other grounds*.  "In patent cases, the law of the regional circuit applies

24   when considering a § 1404 motion."  *Eli Lilly & Co. v. Genentech, Inc.*, No. 13-CV-0919 YGR,

25   2013 U.S. Dist. LEXIS 114460, at *11 (N.D. Cal. Aug. 13, 2013) (citing *In re TS Tech USA*

26   *Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008)).

27           The moving party first must show that the transferee forum is "one in which the action

28   might have been brought."  *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960).  Next, the moving party

7

1     must "demonstrate that a transfer of venue would promote the convenience of parties and

2     witnesses and the interests of justice." *Kannar v. Alticor, Inc.*, No. C-08-5505 MMC, 2009 WL

3     975426, at \*1 (N.D. Cal. Apr. 9, 2009). At the second step, "the district court has discretion to

4     adjudicate motions for transfer according to an individualized, case-by-case consideration of

5     convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000)

6     (quotations omitted). The Court may consider:

7             (1) the location where the relevant agreements were negotiated and
        executed, (2) the state that is most familiar with the governing law,
8       (3) the plaintiff's choice of forum, (4) the respective parties'
        contacts with the forum, (5) the contacts relating to the plaintiff's
9       cause of action in the chosen forum, (6) the differences in the costs
        of litigation in the two forums, (7) the availability of compulsory
10      process to compel attendance of unwilling non-party witnesses, and
        (8) the ease of access to sources of proof.

11    *Id*. at 498–99.

12

13            **ii.    Analysis**

14            Here, the Northern District of California is an improper venue under § 1400(b). It is

15    undisputed that Defendants do not reside in the Northern District of California. *See* FAC ¶ 10.

16    And Plaintiffs have not sufficiently alleged that Defendants *both* infringed and have an established

17    place of business in this district. Rather, Plaintiffs allege only that several acts of infringement

18    occurred in this district. *See, e.g.*, *id.*, Ex. M (indicating one of Defendants' importers shipped 30

19    cases of Defendants' 3 Kilos Vodka to a distributor located in San Carlos, California in May

20    2016); *id.*, Ex. K (directing advertising efforts at the state of California). This is insufficient on its

21    own to support venue. *See TC Heartland*, 137 S. Ct. at 1520–21.

22            In light of the lack of proper venue in this district, the Court has discretion either to dismiss

23    the case or, in the interest of justice, transfer it to a district where it could have been brought

24    initially. *See* 28 U.S.C. § 1406(a). Here, the Southern District of New York is undisputedly a

25    proper venue because Defendants reside there. *See* 28 U.S.C. § 1400(b); FAC ¶ 10; *see also* Mot.

26    at 14–15. Although Plaintiffs advocate for a different outcome, they do not dispute that venue

27    would be proper in that district. Accordingly, the Court exercises its discretion to transfer this

28    case to the Southern District of New York.

**III.  CONCLUSION**

For the foregoing reasons, the Court DENIES the motion to dismiss for lack of personal jurisdiction and GRANTS IN PART the motion to dismiss for improper venue.  Rather than dismissing the action in its entirety, however, the Court TRANSFERS the case to the Southern District of New York pursuant to 28 U.S.C. § 1406(a).  The clerk is directed to transfer the case to the United States District Court for the Southern District of New York and to close the case file.

**IT IS SO ORDERED.**

Dated:  7/31/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge